**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| KENNILLE COLLINS, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | No. 25-cv-12766 |
| v. | ) ) | Judge April M. Perry |
| HIGH 5 ENTERTAINMENT, LLC d/b/a, HIGH 5 CASINO, | ) ) ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

Kennille Collins ("Plaintiff") filed this lawsuit against High 5 Entertainment, LLC d/b/a,

High 5 Casino ("Defendant") alleging violations of the Illinois Loss Recovery Act ("ILRA"), the

Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), and also asserting a

claim of unjust enrichment. Doc. 1. Defendant contends that this case is subject to mandatory

arbitration and has moved to compel arbitration. Doc. 14. For the reasons discussed below,

Defendant's motion to compel arbitration is granted.

**BACKGROUND**[1]

Defendant operates a website that offers customers the ability to play online games such

as jackpots, slots, and roulette. Doc. 1 ¶¶ 1-3. Plaintiff, an Illinois resident, signed up for two

accounts with Defendant: the first on March 23, 2025 and the second on May 11, 2025. *Id.* ¶ 15,

Doc. 15-1 ¶¶ 16, 21. Plaintiff thereafter began making in-game purchases of "Game Coins" and

"Sweeps Coins." Doc. 1 ¶¶ 84-85. Plaintiff alleges that Defendant's website functions as an

---

[1] For the purposes of resolving a motion to compel arbitration, courts draw the background facts from the parties' pleadings, *Reineke v. Cir. City Stores, Inc.*, No. 03-C-3146, 2004 WL 442639, at*1 (N.D. Ill. Mar. 8, 2004), and also may consider exhibits and affidavits regarding the arbitration agreement in question. *Brown v. Worldpac, Inc.*, No. 17-CV-6396, 2018 WL 656082, at *2 (N.D. Ill. Feb. 1, 2018).

unlicensed and illegal gambling operation and that she lost hundreds of dollars while playing Defendant's games. *Id*. ¶¶ 1, 87.

Upon signing up for Defendant's website, Plaintiff agreed to Defendant's terms of use, which included an arbitration provision (the "Arbitration Agreement"). Doc. 15-1 ¶¶ 16-21. The Arbitration Agreement provided:

> Unless you opt out, you and H5C agree that any claim, controversy or dispute between you and H5C (the "parties") arising out of or relating to your access to or use of any H5C service or to the Content will be resolved exclusively through final and binding arbitration, rather than in court or before a jury, regardless of whether such claim, controversy or dispute arose prior to, on or subsequent to the date of your acceptance of these Terms of Use.

*Id.* at 64. Section 33(e) of the Arbitration Agreement also stated that "any dispute over the formation, enforceability, validity or severability of any provision of this Section shall be resolved by a court and not be a subject of the arbitration." *Id.* at 66. Meanwhile, Section 33(g) provided "[t]he arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve all disputes arising out of or relating to the interpretation, applicability, enforceability or formation of these Terms of Use, including, but not limited to any claim that all or any part of these Terms of Use are void or voidable, or whether a claim is subject to arbitration." *Id.* at 67. Plaintiff did not opt out of the Arbitration Agreement. *Id*. ¶¶ 17, 18, 21.

## LEGAL STANDARD

The Federal Arbitration Act ("FAA") authorizes a federal district court to compel a dispute between parties to arbitration if it finds that (1) the parties formed a valid, written agreement to arbitrate; (2) the dispute falls within the scope of that agreement, and (3) a party refuses to arbitrate. *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005).

The FAA requires courts to enforce arbitration agreements according to their terms and puts them on an equal footing with other contracts. *A.D. v. Credit One Bank, N.A.*, 885 F.3d 1054, 1060 (7th Cir. 2018). Ordinary principles of state contract law are used to determine whether parties formed an agreement to arbitrate. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). [2] Since "arbitration agreements are contracts, a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *A.D.*, 885 F.3d at 1060 (internal citation omitted).

In deciding a motion to compel arbitration, courts apply the same standard as is used in deciding motions for summary judgment. *See Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002). Specifically, "[a] district court may conclude as a matter of law that parties did or did not enter into an arbitration agreement only if no genuine dispute of material fact exists as to the formation of the agreement." *Wallrich v. Samsung Elecs. Am., Inc.*, 106 F.4th 609, 618 (7th Cir. 2024). In deciding whether there is any genuine issue of material fact, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [her] favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (discussing standard used at summary judgment).

## ANALYSIS

This case presents no factual disputes about the Arbitration Agreement. The declaration submitted by Plaintiff does not dispute that she signed up for an account with Defendant, agreed to Defendant's terms and conditions, and did not opt-out of the arbitration provision. *See* Doc.

---

[2] The Court applies Illinois law to this dispute as neither party has argued for another state's law or that the result would be different under any other relevant state's law. *See Sosa v. Onfido, Inc.*, 8 F.4th 631, 637 (7th Cir. 2021) (noting that a district court in Illinois applies Illinois law unless a party argues for application of another jurisdiction's law and demonstrates an outcome-determinative difference).

24-2. Nor has Plaintiff argued that her claims fall outside the scope of the Arbitration Agreement as written. Instead, Plaintiff argues that both the terms as a whole as well as the Arbitration Agreement are void *ab initio* because Defendant's website is an illegal gambling operation and the agreements are procedurally and substantively unconscionable. Therefore, Plaintiff asserts that arbitration cannot be compelled on any issue. Defendant responds that the Arbitration Agreement is valid and delegates the remaining questions to the arbitrator. For the reasons that follow, the Court grants Defendant's motion to compel arbitration.

There are two types of validity challenges under § 2 of the FAA. *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010). One is a challenge to the validity of the agreement to arbitrate and the second challenges the contract as a whole. *Id.* Plaintiff makes arguments challenging both the contract as a whole and the Arbitration Agreement and argues that both should be determined by this Court. However, if a court determines that there is a valid arbitration agreement, it is up to the arbitrator to determine the validity of the contract as a whole. *See Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445-46 (2006) ("[U]nless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance."); *Janiga v. Questar Capital Corp.*, 615 F.3d 735, 741 (7th Cir. 2010) ("[W]hen faced with motions to stay suits or order arbitration, courts should evaluate only the validity of the arbitration agreement; challenges to the validity of the entire contract … should be left to the arbitrator."). Plaintiff argues that *Buckeye* and its progeny should not apply when the contract is void *ab initio* for illegality. However, the Supreme Court has expressly rejected this argument. *See Preston v. Ferrer*, 552 U.S. 346, 353 (2008) ("The plaintiffs in *Buckeye* alleged that the contracts they signed, which contained arbitration clauses, were illegal under state law and void *ab initio*… we held that the plaintiffs' challenge was within the province of the

arbitrator to decide."). Even if Plaintiff is correct that the contract is void or violates state law, the arbitration provision can be enforced with the arbitrator deciding such challenges. *See Buckeye*, 546 U.S. at 448 ("[T]he *Prima Paint* rule permits a court to enforce an arbitration agreement in a contract that the arbitrator later finds to be void."); *see also Rent-A-Ctr.*, 561 U.S. at 70 (2010) ("§ 2 [of the FAA] states that a 'written provision' 'to settle by arbitration a controversy' is 'valid, irrevocable, and enforceable' *without mention* of the validity of the contract in which it is contained.") (emphasis in original).

The Court therefore must first determine whether the Arbitration Agreement itself is valid. *See Rent-A-Ctr.*, 561 U.S. at 71 ("If a party challenges the validity under § 2 of the precise agreement to arbitrate at issue, the federal court must consider the challenge before ordering compliance with that agreement under § 4."). Plaintiff argues that it is not, because an Arbitration Agreement in an illegal gambling contract is not supported by consideration. In support of this proposition, Plaintiff cites an Alabama Supreme Court decision, *Macon County Greyhound Park, Inc. v. Hoffman*, 226 So.3d 152 (Ala. 2016), which held an arbitration provision void and unenforceable based on illegal gambling consideration. *Macon*, 226 So.3d at 167. The Court does not find *Macon* to be analogous. In *Macon*, the arbitration provision stated "[a]s a condition of participating in any bingo game, Patron agrees that any and all disputes" would be resolved through arbitration. *Macon*, 226 So.3d at 155. Courts that have been asked to apply *Macon* have found that its holding only extends to arbitration agreements that expressly tie the arbitration agreement to illegal gambling or when the illegality of the gambling at issue is undisputed, and this Court agrees with that reasoning. *See, e.g., Hall v. Sweepsteakes Ltd.*, No. 3:25-CV-345, 2026 WL 701560, at *4 n.3 (M.D. Ala. Mar. 12, 2026); *Huynh v. Boom Shakalaka, Inc.*, 814 F. Supp. 3d 1141, 1148 (C.D. Cal. 2026). Neither is the case here.

Moreover, the Arbitration Agreement is supported by its own valid consideration because under Illinois law "a mutual promise to arbitrate is sufficient consideration to support an arbitration agreement[.]" *Gen. Motors Acceptance Corp. v. Johnson*, 822 N.E.2d 30, 37 (Ill. App. Ct. 2004); *see also Gibson v. Neighborhood Health Clinics, Inc.*, 121 F.3d 1126, 1131 (7th Cir. 1997) ("Often, consideration for one party's promise to arbitrate is the other party's promise to do the same."). For these reasons, the Court finds the Arbitration Agreement is supported by valid consideration.

Plaintiff also argues that the Arbitration Agreement is unenforceable because the delegation provisions are internally inconsistent. Specifically, Plaintiff argues that Section 33(e), which provides that "any dispute over the formation, enforceability, validity or severability of any provision" of the Arbitration Agreement shall be resolved by a court, cannot be reconciled with Section 33(g), which gives the arbitrator "exclusive authority to resolve disputes arising out of or relating to the interpretation, applicability, enforceability or formation of these terms of use, including, but not limited to any claim that all or any part of these terms of use are void or voidable, or whether a claim is subject to arbitration." *See* Doc. 15-1 at 66-67. The Court does not believe that these are inconsistent, and understands them to instead restate the proposition described above that courts first determine whether Arbitration Agreement is enforceable, and then arbitrators decide the same with respect to the contract as a whole.[3]

---

[3] That said, the Court also finds unpersuasive Defendant's argument that Section 33(e) only "dictates the Court can determine whether the parties entered into a contract while Section 33(g) reserved all other arbitrability arguments for the arbitrator." Doc. 29 at 2-3. Section 33(e) is much broader than the issue of contract formation, explicitly stating that disputes over "enforceability, validity or severability of any provision of [the Arbitration Agreement] shall be resolved by a court." Doc. 15-1 at 66. The provision therefore falls well short of the required standard of clear and mistakable evidence to delegate these issues to the arbitrator. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) ("Courts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so.") (internal quotation omitted).

Plaintiff's final challenge to the Arbitration Agreement is that it is both procedurally and substantively unconscionable. In Illinois, an unconscionability finding "may be based on either procedural or substantive unconscionability, or a combination of both." *Kinkel v. Cingular Wireless LLC*, 857 N.E.2d 250, 263 (Ill. 2006). Procedural unconscionability exists when a term is "so difficult to find, read, or understand that the plaintiff cannot fairly be said to have been aware he was agreeing to it, and also takes into account a lack of bargaining power." *Razor v. Hyundai Motor Am.*, 222 Ill. 2d 75, 100 (Ill. 2006). The first procedural unconscionability argument that Plaintiff makes specific to the arbitration agreement is the allegedly conflicting terms of Sections 33(e) and 33(g). However, as the Court stated above, these provisions are not incompatible. Plaintiff also argues that the Arbitration Agreement is procedurally unconscionable in that it is a contract of adhesion. However, that argument applies to the contract as a whole, not the Arbitration Agreement specifically. With respect to the Arbitration Agreement specifically, Plaintiff was given the opportunity to opt-out, Doc. 15-1 at 16, which means it was not a contract of adhesion. Finally, Plaintiff argues that the Arbitration Agreement is procedurally unconscionable due to the language being "buried" on page fifty of the terms and conditions. Doc. 24 at 16. But Defendant correctly notes that there is a notice regarding the arbitration requirement in the "Introductory Information" part of the terms, in the sixth paragraph of the agreement. Doc. 15-1 at 16. For these reasons, the Court does not find the Arbitration Agreement to be procedurally unconscionable.

The Court next turns to substantive unconscionability. Contract terms are substantively unconscionable when they are: (1) so one-sided as to be oppressive; (2) imbalanced in the rights and obligations they impose; and (3) when there is a significant cost-price disparity, which involves a comparison of the cost of bringing an arbitration proceeding versus the damages the

plaintiff can expect to receive. *Kinkel*, 857 N.E.2d at 267. Specific to the Arbitration Agreement, Plaintiff cites the one-year statute of limitations for claims and confidentiality requirements as supporting a finding of substantive unconscionability.[4]

Under Illinois law, a contractual provision that limits the time within which to file a lawsuit is generally enforceable. *Founders Ins. Co. v. Father & Son Home Improvement II, Inc.*, No. 1-10-2759, 2011 WL 2409308, at *3 (Ill. App. Ct. 2011). Defendant provides no case law for her contention that this limitation period is against Illinois public policy.[5] Courts applying Illinois law have found similar contractual periods (between six months and one year) were reasonable. *See Sears Home Appliance Showrooms, LLC v. Charlotte Outlet Store, LLC*, No. 17-CV-8478, 2018 WL 3068459, at *4 (N.D. Ill. June 21, 2018) (collecting cases). Moreover, Illinois courts have "routinely upheld contractual provisions shortening a limitations period otherwise provided by statute." *Thomas v. Guardsmark, Inc.*, 381 F.3d 701, 706 (7th Cir. 2004). Given this, the Court does not find the shortening of the statute of limitations to be substantively unconscionable.

Plaintiff next argues that the confidentiality provision renders the arbitration agreement

---

[4] Plaintiff also cites the limits on liability and indemnification provisions, but these provisions are not contained within the Arbitration Agreement. *See* Doc. 15-1 at 58-59. Even if they were contained in the Arbitration Agreement, it is unlikely they would support a finding of substantive unconscionability. For example, the loss limitation section specifically states that it may not apply "to the extent that applicable law may not allow the limitation or exclusion of liability for such damages" and that it does not "release liability for intentional misconduct, recklessness, gross negligence, or fraud." Doc. 15-1 at 59. Therefore, it is doubtful that it would even apply to Plaintiff's claim for damages under the ICFA. In any event, an arbitrator is capable of handling these types of issues.

[5] The only case Plaintiff cites in this section of her opposition, *Fahy v. Minto Dev. Corp.*, 722 F. Supp. 3d 784 (N.D. Ill. 2024), finds that an arbitration provision that serves as a "prospective waiver of a party's right to pursue statutory remedies" is unenforceable as contrary to public policy. 722 F. Supp. 3d at 798. But barring certain types of claims is different from limiting the time to bring those claims; time limits are routinely enforced by Illinois courts even where such limits may bar meritorious claims. *See 15th Place Condo. Ass'n v. S. Campus Dev. Team, LLC*, 14 N.E.3d 592, 598 (Ill App. Ct. 2014).

substantively unconscionable, citing *Kinkel v. Cingular Wireless LLC*, 857 N.E.2d 250 (Ill. 2006) and *Hwang v. Pathway LaGrange Prop. Owner, LLC*, 260 N.E.3d 99 (Ill. App. Ct. 2024). In *Kinkel*, the court cited a confidentiality clause as one of "several other provisions of the arbitration clause [that] also burden an individual customer's ability to vindicate his claim" but based its finding of unconscionability primarily on a class action waiver coupled with other provisions that made class litigation the "only reasonable, cost-effective means of obtaining a complete remedy." *See Kinkel*, 857 N.E.2d at 275. In this case, in contrast, cost-effective remedies are available. Specifically, Section 33(d) of the Arbitration Agreement states that Defendant will cover all arbitration costs for claims under $10,000 and for claims over this amount, it will cover costs to the extent a claimant has shown that the costs will be prohibitive compared to litigation. Doc. 15-1 at 65-66. Similarly, in *Hwang*, the court found an arbitration agreement substantively unconscionable based on numerous factors separate and apart from the confidentiality clause, the primary of which was that the arbitration agreement required the plaintiff to arbitrate all of his most likely claims but did not require the defendant to arbitrate the claims it would most likely bring. *See Hwang*, 260 N.E.3d at 107. Conversely, the Arbitration Agreement here requires both parties to arbitrate all claims. Additionally, the Arbitration Agreement contains an opt-out provision which weighs heavily against unconscionability. *See Tory v. First Premier Bank*, No. 10-C-7326, 2011 WL 4478437, at \*4 (N.D. Ill. Sept. 26, 2011) (noting that "a meaningful opportunity to opt out of the arbitration provision … defeats any claim that the content of the arbitration provision is unconscionable."). For these reasons, the Court does not find that the Arbitration Agreement is substantively unconscionable.

## CONCLUSION

Because the parties formed a valid, written agreement to arbitrate, this dispute falls

within the scope of that agreement, and Plaintiff has refused to arbitrate, Defendant's motion to compel arbitration is granted and the case is stayed pending the completion of the arbitration proceedings. The parties shall file a status report within fourteen days of the conclusion of the arbitration proceedings or by February 22, 2027, whichever occurs sooner.

Dated: May 22, 2026

_____
APRIL M. PERRY
United States District Judge